Peck, J.
delivered the opinion of the court. (Crabb, J. having been of counsel below, did not sit.) It has been assigned for error in this case, 1 st, that a confession of j udgment by the securities, without notice to Newnan of the pendency of the suit against them, by the bank, or notice to him of the motion against him, was irregular and unauthorized, &c. 2d, that such judgment should not have been awarded, before payment, on the part of the securities, of the judgment against them; 3d, that there was error in rendering a joint judgment in favour of the securities; 4th, that the circuit judge erred, in requiring security beyond the costs and damages.
These will be considered in their order. On the first question, it may be remarked, that as a general rule, a party, to be concluded, must have notice. It is in vain to provide by fundamental rules, for keeping open courts of justice, and doing right and justice to every citizen, if no day be given him to appear and show cause. But reasonable as these rules are, still there are cases, growing out of special statutes, silent in their provisions as to notice, which constitute exceptions to the general rule. Some of these ex *65 ceptions will be found in proceedings against sheriffs, clerks, and other officers.
The decisions, based upon acts in reference to officers of the courts, are founded upon their delinquencies; the laws providing for the return of process, and accountability of officers, provide for judgments upon motion, either for a failure to return, orto account. In all such cases the possession of the writ, &c. beyond return day, is notice. (Singleton vs. Bell, Cooke’s Rep. 267.)
Another class of cases grew out of the acts of assembly, authorizing a stay of execution, upon giving bond and security for the debt. These acts were silent as to notice. In the case of Coleman vs. the Trustees of the Davidson Academy, Cooke's Rep. 258, the court say, “if the act be silent as to notice, none need be givenand judgments were uniformly taken in those cases without notice. So of the acts out of which the present proceeding has originated; no notice is required either by the act of 1801, ch. 15, sec. 3; or that of 1809, ch. 69. The reason is just as strong in the one case, as in the other. Perhaps when we consider that judgment was taken in the former case, as well against the securities as the principal, in the bond for stay of execution, it might with some propriety be esteemed a stronger measure, than that prescribed in the present case. In both cases the party has notice of one thing, to wit: that the debt is unpaid, and' that the securities are responsible.
It is, however urged by the plaintiff’s counsel, “that judgment should not have been confessed'by the securities: that at any rate, Newnan should have been notified of the existence of the suit against them; that the course pursued by the securities, in its consequences, deprived him of the benefit of the act of 1801, ch. 15, sec. 3; that the reasoning of the court, in the case in 4 Haywood, is unsatisfactory, &c. These questions were made in the case of Williams, ex'r. &c. vs. Greer's adm'rs. 4 Haywood's Rep. 240, and overruled. We concur with the reasoning and conclusions drawn in-that case.
2d question. Should the securities have paid the money *66 previously to taking a judgment over against the principal? rpwQ cases? determined by the supreme court at Charlotte,* to wit, Harris vs. M’Clure, and Hogan vs. Stewart, it is said settle the question, that payment of the money was not an indispensable prerequisite to the judgment. Pursuing the words of the act of 1809, ch. 69, the obtaining of judgment alone, will authorize the judgment over. Obvious reasons may have operated upon the legislature, in the adoption of that provision; and our construction should, as far as possible, effectuate the purposes in view.
3d. As to the joint judgment. Had the money been paid by the securities, then we should be of opinion that a joint judgment would be erroneous; but the judgment being against both, and that being the ground of the judgment over, it cannot be perceived why Newnan should complain. That mode of proceeding was less expensive, than to have taken several judgments. It is no argument on the part of the principal, to say, that one of the securities might release the judgment; or that he was not sued in the original action. Execution upon a judgment against the securities, could not reach his property. But had all been sued, the act of 1820, ch. 151, sec. 16, directs that the money, if possible, shall be made out of the property of the principal debtor: in accordance with the principle, that the person contracting the debt should pay it.
The act of 1809, ch. 69, gives an execution to the securities, against the person who is bound in conscience to make payment; and so effects all the purposes of the act of 1820. The provisions of both acts are founded on principles of equity, which ought to be fostered.
The legislature, by their language in the act of 1809, no doubt, contemplated a joint judgment. There was in the case before the court, a joint (as well as joint and several,) liability. Why not a joint remedy? (See 5 East's Rep. 225; 1 Taunton 7.)
The foregoing conclusions settle the last question raised by the record, to wit: Whether the circuit judge erred, in *67 ruling Newnan to security for debt, as well as costs and damages.
We do not. say that it is wholly discretionary in the circuit judge to make such an order; but-this may be safely said, that he ought, in all cases, to require security for debt, costs, and damages, unless he conceived .there was such an error in the record, as would probably produce a reversal. (Vide act of 1823, ch. 54, sec. 2.) In this case there being no error, the order was properly.made. •
J udgment affirmed.

 The cases alluded to have not been reported. — Reporters.-